UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

REGINALD J.,

    Plaintiff,

v.

ANDREW SAUL,

    Defendant.

No. 18 CV 4819

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Reginald J.[1] contests the Social Security Commissioner's decision denying him supplemental security income ("SSI") based on disability.[2] For reasons explained below, I affirm the Commissioner's decision.

## I. Legal Standards

Because plaintiff is a pro se litigant, I interpret his submission liberally and will address any logical argument I am able to identify. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017). I can affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). Only a "final decision" of the Social Security Commissioner is subject to judicial review. *Id.* A ruling by the Appeals Council is considered a final decision.

---

[1] I refer to the plaintiff by his first name and the first initial of his last name to comply with Internal Operating Procedure 22.

[2] The complaint names the Social Security Administration ("SSA") as the defendant. [1]. The Commissioner of Social Security is the proper defendant in civil actions against the SSA. 42 U.S.C. § 405(g). The current commissioner is Andrew Saul, so he is the proper defendant. *See* Fed. R. Civ. P. 25(d).

*Id.*; 20 C.F.R. § 416.1481.[3] In plaintiff's case, the Appeals Council adopted many of the findings and conclusions of the administrative law judge ("ALJ"). [10-1] at 8.[4]

## II. Background

Reginald J. received SSI disability payments as a child for attention and learning disorders. [10-1] at 71, 132. After he turned eighteen in February 2013, the agency conducted a redetermination of his benefits. [10-1] at 133. Unlike disability for children, SSI disability for adults depends on the adult's ability to work. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.987(b). Some people have medical problems but are still able to work. On June 10, 2013, the agency concluded that plaintiff was able to perform unskilled work despite his limitations, and therefore denied him SSI disability benefits. [10-1] at 133.

He appealed the decision, stating that he continued to be disabled as an adult because of attention, learning, and mood disorders. *Id.* at 151. In February 2015, the SSA notified plaintiff that his appeal failed, and he was not considered disabled. *Id.* at 159. He then requested review by an ALJ in March 2015. *Id.* at 165. A hearing was held on April 4, 2016, at which plaintiff, his mother, and a vocational expert testified. *Id.* at 71. The ALJ issued a decision on October 4, 2016. *Id.* at 80. After an independent review of plaintiff's case, the ALJ agreed that plaintiff was not disabled for SSI purposes. *Id.*

---

[3] The Commissioner has broad authority to create rules and regulations to enact social security laws. 42 U.S.C. § 405(a).

[4] Bracketed numbers refer to entries on the district court docket. The number following a dash in the bracket refers to an exhibit associated with the docket entry. Referenced page numbers are from the CM/ECF header placed at the top of documents.

In her decision, the ALJ indicated her review of plaintiff's health conditions was from the date of his eighteenth birthday in February 2013 to the present, which was October 2016 at the time. *Id.* at 71. She explained the five-step test used to evaluate adult disability. *Id.* at 72–73; 20 C.F.R. § 416.920. At each step, the ALJ was required to apply a "special technique" used for evaluating applicants with mental impairments. 20 C.F.R. § 416.920a.

The first step, which considers the applicant's employment, does not apply to age-18 redeterminations, so the ALJ proceeded to the next step. 20 C.F.R. § 416.987(b); 20 C.F.R. § 416.920(b); [10-1] at 72.

Steps two focuses on the severity of the applicant's health conditions. 20 C.F.R. § 416.920(c). This step eliminates applicants with non-severe problems—people whose health conditions only have a minimal effect on their ability to perform basic work activities, like walking or understanding. *Id.*; 20 C.F.R. § 404.1522; SSR 85-28, 1985 WL 56856 (1985). Without any explanation, the ALJ concluded that plaintiff's health conditions were severe. [10-1] at 73.

Step three evaluates whether the applicant has a disorder, or the equivalent of a disorder, that the SSA already recognizes as a disability that prevents individuals from working. 20 C.F.R. § 416.920(d). This step streamlines the process by identifying applicants that qualify for SSI disability without having to complete steps four and five. Under the regulations that were effective at the time, which impacted the "special technique," the ALJ determined that plaintiff had "organic mental disorders" and "affective disorders," but that none of his disorders severely limited his ability to

3

function in the four categories: daily living; socializing; concentration, persistence, pace; and decompensation. [10-1] at 75. The ALJ explained that plaintiff's disorders only mildly limited his daily life activities, based on his brief college attendance, self-care routine, semiprofessional basketball career, and job at a nursing home. *Id.* While she noted his poor eye contact and quiet demeanor, the ALJ said plaintiff's social functioning was only mildly limited based on the amount of time he spent with friends and playing basketball. *Id.* The ALJ did find that he faced moderate restrictions with his ability to concentrate, persist, and pace himself, based on his longstanding ADD and learning disorder diagnoses, and the testimony of plaintiff and his mother. *Id.* The ALJ found there was no evidence of decompensation (physical or mental deterioration). *Id.* Because plaintiff only faced "mild" and "moderate" restrictions, and not more severe limitations, plaintiff's disorders did not amount to disabilities already recognized by SSA. *Id.* On the scale of "none," "mild," "moderate," "marked," and "extreme" restrictions, he needed at least two "marked" restrictions or one "extreme" restriction to qualify. *Id.*; 20 C.F.R. § 416.925(b)(2)(ii). The ALJ also noted that none of the physicians said that plaintiff's health conditions were acute enough to qualify. [10-1] at 73.

When an applicant's impairments are severe under step two (because they have more than a minimal effect on the applicant's ability to do basic work) but are not recognized disorders under step three, the ALJ must determine the applicant's "residual functional capacity" ("RFC") in order to complete steps four and five of the adult disability test. 20 C.F.R. § 416.920(a)(4). An applicant's RFC represents the

most physical and mental activity the applicant can do in a work setting—8 hours a day, 5 days a week—despite his medical impairments. SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996). This is a broad assessment that considers: 1) all the relevant evidence, medical and non-medical; 2) all the applicant's limitations, including non-severe ones; and 3) the applicant's physical (exertional) limitations and nonphysical (nonexertional) limitations. *Id.*

The ALJ considered plaintiff's symptoms, objective medical evidence, opinion evidence, and all other relevant evidence and concluded that he had "medically determinable impairments." [10-1] at 74. She reviewed plaintiff's and his mother's testimony, noting their statements about his anxiety, mood swings, self-care, failure to take medication, basketball routine, and college experience. *Id.* The ALJ also incorporated her findings based on the "special technique," which evidenced plaintiff's nonphysical limitations in his daily activities, socializing, and cognitive abilities. *Id.* at 75. The ALJ did not discuss any exertional limitations.[5] She reviewed plaintiff's school and medical records, noting that he responded well to medicine but refused to take it. *Id.* at 76. The ALJ also explained the weight she gave to certain opinions and examinations, based on their consistency with objective medical evidence and the overall record.[6] *Id.* at 77–78. Ultimately the ALJ concluded that plaintiff experienced health problems but that they did not limit his ability to perform basic work activities,

---

[5] Examples of exertional activities are sitting, standing, walking, or lifting. SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996). Plaintiff has never alleged exertional impairments.

[6] New SSA regulations revised the rules for evaluating opinion evidence, but this change does not affect plaintiff's case because his claim was filed before March 27, 2017. 20 C.F.R. § 416.927.

based on his active social life and basketball workout routine. *Id.* at 78. She noted his noncompliance with his medication but said he was still able to function relatively well even without medication. *Id.* Based on evidence of his limitations and abilities, the ALJ concluded that plaintiff had the capacity to understand simple instructions; perform routine, repetitive tasks; engage in simple decision-making; and tolerate occasional changes in the workplace, as long as he had no public interaction. *Id.*

Step four of the disability test evaluates whether an applicant can perform any past work based on their current RFC. 20 C.F.R. § 416.920(a)(4)(iv); 20 CFR § 416.965. The ALJ skipped this step because plaintiff had no prior work experience. [10-1] at 79.

Step five of the test evaluates an applicant's RFC, age, education, and work experience to determine if the applicant can perform some job in the national economy. 20 C.F.R. § 419.920(g). For applicants under the age of 50, age generally does not seriously affect that person's ability to work. § 416.963. A high school education generally means the applicant can perform skilled work to varying degrees. § 416.964. Plaintiff had no relevant work experience to consider at step five. § 416.965; [10-1] at 79. At the hearing, the ALJ asked a vocational expert about the number of jobs available to a person like plaintiff. [10-1] at 121. The ALJ noted plaintiff's younger age, high school education, and lack of work experience. *Id.* She stated that he had no exertional limitations but experienced nonexertional limitations that caused "mild" to "moderate" restrictions on his ability to function in daily life; socializing; and concentration, persistence, or pace. *Id.* She described his

RFC in detail. *Id.* at 122. She noted other potential issues, like fast-paced production requirements, the inability to stay on task, and unexcused absences from work. *Id.* at 123. In response to the ALJ's comments, the vocational expert testified that the following jobs accommodated plaintiff's limitations: fastener, polisher, kitchen helper, and folder. *Id.* at 122–123. The expert testified there were approximately 52,000 fastener jobs, 27,000 polisher jobs, 105,000 kitchen helper jobs, and 8,000 folder jobs in the national economy. *Id.* Based on the vocational expert's testimony, the ALJ concluded there were a significant number of jobs that plaintiff could perform despite his limitations, and therefore he had not been disabled for SSI purposes since becoming an adult. *Id.* at 80.

In November 2016, plaintiff requested review by the SSA Appeals Council. *Id.* at 67. He did not submit additional statements or evidence to the council. *Id.* at 8. The council issued its decision, denying plaintiff any benefits, on May 17, 2018. *Id.* at 12. The council found one error and revised one part of the ALJ's analysis to reflect a new change in the law. *Id.* at 9. First, the ALJ had started her review of plaintiff's health conditions from the date of his eighteenth birthday. *Id.* at 71. The Appeals Council wrote that the correct start date was June 10, 2013, the date he was notified that his benefits had been terminated. *Id.* at 9. This was because under the law, the SSA has one year from the beneficiary's birthday to conduct an age-18 redetermination. 20 C.F.R. 416.987(c), (e).

Second, after the ALJ's decision, the regulations about mental disorders were revised, and the Appeals Council was required to reevaluate plaintiff's mental

7

impairments, using the "special technique," under the new rules. [10-1] at 9–10; Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01 (Sept. 26, 2016). The functional categories—daily living; socializing; concentration, persistence, pace; and decompensation—had changed to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 416.920a. Based on plaintiff's educational records, the Appeals Council concluded that he had a mild limitation with respect to understanding, remembering, or applying information. [10-1] at 9. Based on evidence about his socializing, the council found plaintiff's ability to interact with others was mildly limited. *Id.* Based on his ADD and learning disorder diagnoses, his testimony, and his mother's, the council found that plaintiff faced moderate limitations with respect to his ability to concentrate, persist, and maintain pace. *Id.* Based on evidence about his personal care, home life, recreational and athletic activities, the council concluded that plaintiff's limitation to adapt or manage himself was mild. *Id.* Because his functional limitations were at most "moderate," and did not seriously interfere with his ability to function, the council concluded, like the ALJ, that plaintiff's impairments did not amount to a disability recognized by the SSA under step three. *Id.* at 10. Besides these two issues, the Appeals Council adopted all of the ALJ's findings at each step of the five-part test. *Id.* at 8.

Plaintiff sought judicial review of the Appeal Council's decision and filed this complaint. [1]. He alleges that 1) he has been disabled since turning eighteen; 2) his health conditions have worsened and; 3) he has provided the SSA with continuous

8

documentation of his disability. *Id.* at 1. He notes his disability severely limits his ability to function on a daily basis. *Id.* at 1–2. Plaintiff attached three exhibits to his complaint: hospitalization records from May 2018; a letter from June 2018 about his mental health problems; and a safety plan from June 2018. *Id.* at 11, 48, 50. Plaintiff did not, however, file an opening brief under Local Rule 16.4. [15]. Because of his status as a pro se litigant, I required the government to respond to plaintiff's complaint. *Id.* After the government filed a response, plaintiff filed a reply, attaching medical documentation from 2009 to 2019. [18-1].

## III. Analysis

### A. Disability Determination

The law does not permit me to decide whether plaintiff is disabled under SSI. Instead, I am limited to deciding 1) whether the denial was supported by substantial evidence and 2) if any mistakes about the law were made. 42 U.S.C. § 405(g); *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). While I must carefully review the entire record, the bar for showing substantial evidence is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence" means there was enough evidence to reasonably support the Commissioner's denial, even if there was evidence supporting plaintiff's position. *Stephens*, 888 F.3d at 327. In other words, I only analyze whether the Commissioner's decision contains logical explanations connecting the evidence to the conclusion. *Id.* I cannot substitute my own judgment for the Commissioner's, like, for example, by reanalyzing the facts or reweighing the evidence. *Id.* Furthermore, even if I find an error, if I am convinced the same result

would be reached in the future based on the evidence, that error (like the failure to provide a logical explanation) is harmless and remanding the case would be a waste of time and resources. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (cited by *Primm v. Saul*, No. 19-1514, 2019 WL 6220541, at *4 (7th Cir. Nov. 21, 2019)).

The Appeals Council applied the correct start date based on the law. 20 C.F.R. 416.987(c), (e). The Appeal Council's "decision" and "findings," however, list plaintiff's birthdate, and not June 10, 2013, as the date his disability ended. [10-1] at 11–12. In light of the Appeal Council's analysis, it seems this was a typographical, rather than legal, error. Regardless, the error is harmless. The Appeals Council and ALJ also applied the right social security laws, rules, and regulations that were in effect at the time of their respective decisions.

Under step two, the ALJ should have explained why she concluded that plaintiff's impairments had more than a minimal effect on his ability to perform basic work activities.[7] *Id.* at 73. However, this error is harmless, and plaintiff does not contest this finding, which was in his favor. Under step three, the Appeals Council correctly revised the "special technique" analysis based on new social security regulations about functionality. The council explained how the evidence supported its findings of "mild" to "moderate" functional limitations. [10-1] at 9–10.

When assessing an applicant's RFC, an ALJ does not need to provide a written evaluation of every piece of evidence but does have to address contradictory evidence. *Stephens*, 888 F.3d at 329 (citations and quotations omitted). An ALJ's credibility

---

[7] The Appeals Council adopted the ALJ's analysis at step two. [10-1] at 8.

findings are only overturned if they are patently wrong, like if the ALJ overstated medical results, treatment recommendations, or made unjustified inferences. *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018). Here, the ALJ supported her conclusions with evidence and explained the weight she gave to inconsistent opinions and examinations. [10-1] at 74, 76–78. She addressed the evidence that showed that plaintiff suffered mental health problems and nonphysical limitations. *Id.* And she explained why she concluded he was able to function enough to perform basic work, citing the evidence and testimony, including his own, about his active social life, regular basketball workouts, and noncompliance with medical treatment. *Id.* at 78–79. I cannot substitute my own judgment for how the ALJ weighed the evidence to evaluate plaintiff's RFC.

At step five, if an ALJ relies on testimony from a vocational expert, the hypothetical question posed must incorporate all of the applicant's limitations that are supported by medical evidence. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). A vocational expert's testimony can serve as "substantial evidence." *Herr v. Sullivan*, 912 F.2d 178, 181 n.3 (7th Cir. 1990). Here, the ALJ listed all of plaintiff's medically supported limitations, including the restrictions on his ability to work based on his functional limitations. [10-1] at 121–24. *See e.g. Radosevich v. Berryhill*, 759 F. App'x 492, 494 (7th Cir. 2019) (for an applicant with mental impairments, the ALJ's hypothetical was incomplete because it did not include any restrictions in concentration, persistence, or pace). Because the vocational expert identified jobs that

accommodated all of plaintiff's restrictions, his testimony was sufficient evidence for the ALJ to conclude that plaintiff was not disabled. [10-1] at 80.

> **B.** **New Evidence**

I can require the Commissioner to hear additional evidence if it is new, material, and there is good cause for why the evidence was not presented earlier. 42 U.S.C. § 405(g). "New" means the evidence was not in existence or available to plaintiff at the time of his SSA proceedings. *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). "Material" means there is a reasonable probability that the evidence would have led to a different outcome, and it pertains to plaintiff's health conditions during the relevant time period. *Id.*; *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005). While new, the records from 2018 that plaintiff attached to his complaint are not material because they do not pertain to his health conditions during the relevant time period—June 10, 2013 to October 4, 2016. [1] at 11, 48, 50. These documents relate to his allegations about his worsening health conditions; they do not suggest his conditions were different during the period in question. Regarding the evidence from 2009 to 2019 that plaintiff attached to his reply, some of it is repetitive, and none of it would have likely led to a different outcome, in part because most of the records are from 2018 and 2019 and pertain to his current mental state. If plaintiff has developed additional impairments, or his impairments have worsened, he can submit a new application for SSI disability. *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008).

The government argues that plaintiff waived review of any new evidence and cites cases that indicate arguments not raised, or buried, in briefs should be disregarded. [16] at 7–8; *Ehrhart v. Secretary of Health and Human Services*, 969 F.2d 534, 537 n.5 (7th Cir. 1992); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Here, however, the government was on notice of the additional evidence and had the opportunity to respond. [18]. To the extent plaintiff waived review, the waiver applies to new evidence attached to his reply. *See Black v. TIC Investment Corp.*, 900 F.2d 112, 116 (7th Cir. 1990) (new evidence submitted on reply should not be considered unless the non-movant is given an opportunity to respond).

## IV. Conclusion

The Commissioner's decision is affirmed. Enter judgment and terminate case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: December 17, 2019